IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEPHEN DELPH,

      Plaintiff,                      No. CIV S-07-0214 EFB

    vs.

MICHAEL J. ASTRUE,                <u>ORDER</u>
Commissioner of Social Security,[1]

      Defendant.
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's motion for summary judgment or remand is granted, the Commissioner's motion for summary judgment is denied, and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further findings as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

////

////

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security, replacing Linda McMahon, the original defendant herein. Pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

1

## I. BACKGROUND

Plaintiff, born October 21, 1956, applied for disability benefits on July 30, 2004. Administrative Transcript ("AT") 55. Plaintiff alleged he was unable to work since June 2002, due to degenerative disc disease, neck injury, pain, headaches, and depression. AT 18, 37, 39, 47-48, 129. Plaintiff completed high school and has past relevant work as a janitor and forklift driver. AT 39, 47-54, 80-92. Plaintiff injured his neck in 1999, while working as a janitor. AT 153. He underwent a disectomy and fusion on February 8, 2000, and returned to work until June 2002, the alleged onset date of his disability. AT 14, 148, 153. He underwent another disectomy and fusion on June 23, 2003, and applied for disability benefits on July 30, 2004. AT 55, 134-35.

On May 24, 2006, following a hearing before administrative law judge ("ALJ") Antonio Achieved-Torres, the ALJ found that plaintiff was not disabled.[2] AT 13-18. The ALJ made the

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401, *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, *et seq*. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

2

following findings:

1. The claimant has not engaged in substantial gainful activity after June 15, 2002.

2. The medical evidence establishes that the claimant has severe degenerative disc disease, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's subjective complaints are compatible with the performance of light and sedentary work.

4. The claimant has the residual functional capacity for light work activity. The claimant can lift 20 pounds occasionally and 10 pounds frequently. The claimant cans [*sic*] sit for 6 hours, and stand and walk for 6 hours, in an 8 hour day. He can perform activities such as climbing, stooping, kneeling, and crouching on an occasional basis.

5. The claimant cannot perform his past relevant work. The claimant is 49 years of age and has a 12th grade education.

6. Rule 202.21, Appendix 1, Subpart P, Regulations No. 4, directs that the claimant is not disabled, as there are a significant number of jobs that he can perform.

7. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(e)).

AT 18.

On December 15, 2006, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AT 5-7.

////

////

////

---

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3

## II. ISSUES PRESENTED

In his motion for summary judgment, plaintiff presents a single issue challenging the Commissioner's decision. He alleges that the ALJ erred at step five of the sequential evaluation by relying on the Medical Vocational Guidelines and failing to obtain the testimony of a vocational expert.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV. ANALYSIS

Plaintiff contends that the ALJ should have utilized a vocational expert at step five of the sequential evaluation to establish whether there was work that plaintiff could perform in light of his nonexertional limitations. In particular, plaintiff argues that due to his severe neck condition

4

and resultant pain, he needs fifteen minute breaks every ninety minutes, frequently has to alternate between standing and walking, and must avoid prolonged stationary positioning as well as repetitive motions of the neck.  Further, he alleges he can only lift five to ten pounds, cannot pull any significant weight, and can only occasionally do fine manipulative or gross handling.  Finally, he alleges he can only stand or walk for two hours out of an eight hour work day and can sit for no more than half an hour at a time.

This laundry list of limitations is culled from the various medical opinions in the record.  Plaintiff does not explicitly argue that the ALJ should have adopted one medical opinion over another.  Rather, he asserts that the ALJ failed to indicate the specific reports he relied on in determining plaintiff's residual functional capacity, and simply ignored portions of the doctors' opinions that expressed specific nonexertional limitations.  Plaintiff seems to argue that all such opinions should be credited, and that a vocational expert should be called on to assess available jobs in light of the purported limitations.

Instead of calling a vocational expert, the ALJ relied on the Medical Vocational Guidelines to determine that there was a significant number of jobs that plaintiff could perform.  AT 17-18.  The Guidelines in table form (referred to as the "grids") are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment.  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  They reflect combinations of residual functional capacity, age, education, and work experience, and can be used to determine whether work other than a claimant's past relevant work is available.  *See Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

////

////

////

////

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[3] *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc).  The ALJ is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation.  *Desrosiers*, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996).  The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. *Desrosiers*, 846 F.2d at 578.  "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines." *Id*., at 577-78.

When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable.  *Id.*, at 577.  In such cases, the ALJ must take the testimony of a vocational expert in order to identify specific jobs within the claimant's capabilities.  *Burkhart*, 856 F.2d at 1340 (citations omitted); *Aukland v. Massanari*, 257 F. 3d. 1033 (9th Cir. 2001).

////

////

////

---

[3] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10; *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 6 (9th Cir. 1989).  Nonexertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities.  20 C.F.R. § 416.969a (c) (1996); SSR 83-10; *Cooper*, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993).

6

In this case, the ALJ found that plaintiff had the residual functional capacity ("RFC") for light work activity.[4]  Specifically, he found that plaintiff could lift twenty pounds occasionally and ten pounds frequently; he could sit, stand and walk for six hours in an eight hour day and could perform activities such as climbing, stooping, kneeling, and crouching on an occasional basis.  AT 18.  He further found that this RFC determination "would accommodate any limits that the claimant may experience lifting with his upper extremities."  AT 17.

The ALJ did not find that plaintiff had any significant nonexertional limitations, and thus relied on the grids to conclude at step five that plaintiff was not disabled because, although he could not do his past work as a fork lift operator or janitor, he could do skilled or semiskilled light work, pursuant to Rule 202.21.[5]  AT 17-18.

In arriving at this conclusion, the ALJ noted that the "vast majority of physicians . . . suggested that [plaintiff could] perform light work."  AT 17.  Indeed, the record shows that one of plaintiff's treating physicians, Dr. Susan Scholey, M.D., repeatedly opined during her treatment of plaintiff in connection with his worker's compensation claim that he was capable of performing light work.  For example, in December 2001 and October 20, 2003, Dr. Scholey opined that plaintiff was capable of doing light work, but was precluded from prolonged cervical flexion, extension or rotation.  AT 280, 389.

Similarly, plaintiff's other treating physician, Dr. Darin Latimore, M.D., who began treating plaintiff in 2005, opined that plaintiff had no limitations in standing, walking or sitting,

---

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

[5] Rule 202.21 of the grids indicates that a "younger individual" with a high school education and previous work experience of the skilled or semi-skilled variety is not disabled.  The regulations define a "younger individual" as a person age 18 through 49.  Pt. 404, Subpt. P, App. 2, § 201.00(h)(i).

1  and found that he could lift twenty pounds occasionally and less than ten pounds frequently.[6]
2  AT 423.  Examining physician, Dr. Rajeswari Kumar, M.D., also opined in October 2004, that
3  plaintiff could lift twenty-five pounds occasionally and fifteen pounds frequently.  AT 247.  He
4  further opined that plaintiff's ability to stand, walk and sit were unlimited so long as he could
5  change position frequently.  AT 247.

6       This opinion is more or less consistent with that of examining neurologist Nicholas
7  Butowski, M.D., who conducted a comprehensive neurologic examination of plaintiff in March
8  2006.  Based on that examination and a review of plaintiff's medical records, Dr. Butowski
9  opined that plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds
10 frequently.  AT 433.  He also opined that plaintiff could stand and/or walk for six hours in an
11 eight-hour workday, but noted that he "may need a 10-15 minute break every 90 minutes" due to
12 neck pain.  AT 432.

13      In light of these largely consistent opinions, the ALJ properly rejected Dr. Scholey's
14 anomalous opinion from April 2005.  AT 383- 86.  That opinion, recorded on a functional
15 assessment worksheet, indicated that plaintiff could only lift five to ten pounds, sit for a half
16 hour without interruption, and stand or walk for a total of two hours in a workday.  *Id.*  This
17 opinion was conclusory and unsupported by reference to any medical evidence.  *See Meanel v.*
18 *Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported
19 opinion rejected).  Moreover, it contradicted her earlier, consistent assessments that plaintiff was
20 capable of light work, even after his second fusion, and other medical opinions to that effect.
21 /////

---

[6] Although Dr. Latimore opined that plaintiff could lift "less than ten pounds" frequently, the requirements for light work merely require a person to lift no more than twenty pounds at a time and "up to ten pounds" frequently.  Plaintiff need only be able to perform "substantially" all of these activities.  20 C.F.R. § 404.1567(b).  Dr. Latimore's opinion that plaintiff could lift twenty pounds occasionally and less than ten pounds frequently, is substantially consistent with the definition of light work.  Further, as discussed above, almost every doctor in the record found plaintiff capable of lifting ten pounds frequently.

The ALJ noted this, remarking that this was an "isolated opinion" and that there was no objective evidence showing that plaintiff's ability to sit and ambulate was significantly impaired. AT 17. These were specific and legitimate reasons for rejecting the one anomalous opinion of plaintiff's treating physician. *Lester*, 81 F.3d at 830 (a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons).

However, while the ALJ correctly noted that there were many opinions reflecting plaintiff's ability to perform most of the requirements of light work, he did not address the doctors' opinions as to plaintiff's various collateral, nonexertional limitations.

For example, in treating plaintiff in connection with his worker's compensation claim, Dr. Scholey repeatedly noted that plaintiff should avoid flexing, rotating and extending his neck. AT 280, 383-86, 389. This is consistent with treating physician Dr. Latimore's opinion that plaintiff's neck condition and resultant pain limited his ability to push and pull with his upper extremities. AT 423.

Furthermore, several examining physicians, although opining that plaintiff could essentially perform the basic requirements of light work, noted limitations in connection with his neck impairment. For example, Dr. Thomas S. Pattison, M.D. opined that plaintiff could do "semi-sedentary" work, but should avoid "repetitive motions of the neck" and "prolonged stationary positioning."[7] AT 207-08. Along these same lines, Dr. Kumar opined that plaintiff's ability to stand, walk and sit were unlimited "as long as he can changes [*sic*] position frequently." AT 247. Likewise, Dr. Butowski opined that plaintiff's neck condition could require him to take "ten to fifteen minute breaks every 90 minutes, or so, to stretch and/or rest"

---

[7] The term "semi-sedentary" is used in state workers' compensation cases. *See* Administrative Director, Department of Industrial Relations, Division of Workers' Compensation, State of California, "Schedule for Rating Permanent Disabilities" (April 1, 1997) (the "Revised Schedule"). An individual who can do "semi-sedentary work" "can do work approximately 50% of the time in a sitting position, and approximately 50% of the time in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting." *Id.* This does not directly correlate to the Administration's definition of "light work," but neither does it contradict it. *See* f.n. 4.

9

due to pain. AT 432.

Although the ALJ recited these various opinions in his summary of the evidence, he otherwise ignored them in determining plaintiff's RFC. Instead, he summarily concluded that light work "would accommodate any limits that the claimant may experience lifting with his upper extremities." AT 17. He cited no evidence to support this conclusion, and did not otherwise comment on plaintiff's purported need to take breaks, change positions, or avoid repetitive neck motions.

Likewise, the ALJ failed to address the opinions of Drs. Latimore and Butowski, both of whom found that plaintiff's neck impairment resulted in pain and numbness in his arms and hands, thereby limiting his ability to perform fine manipulation and gross handling. AT 425, 433. The ALJ referred to Dr. Butowski's opinion in his recitation of the evidence, noting that Dr. Butowski found plaintiff could engage in fine manipulation and gross manipulation occasionally, but completely ignored Dr. Butowski's qualification that plaintiff would "not be efficient" at those tasks. AT 15, 433. Dr. Butowski found that plaintiff had reduced sensory perception in his forearm and digits in connection with his radiculopathy, and concluded that his ability to perform gross handling and fine manipulation would be impaired as a result. AT 432-33.

According to Social Security Ruling 85-15, a loss of " fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work." Further, "any limitation" in a claimant's ability to use his hands to grasp, hold, and turn objects "must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." Social Security Ruling 83-14.

Before applying the grids at step five, "the ALJ should first determine if a claimant's nonexertional limitations significantly limit the range of work permitted by his exertional limitations." *Desrosiers*, 846 F.2d at 577.

Here, the ALJ did not make this determination. The ALJ's incomplete reference to Dr. Butowski's opinion did little to resolve the issue of whether plaintiff's purported handling limitations affected the range of work available to him. Further, although he recited the various medical opinions in the record, he otherwise failed to address the multitude of opined non-exertional limitations.

An ALJ is not free to ignore the findings of plaintiff's physicians; he must "either accept the opinions . . . or give specific and legitimate reasons for rejecting them." *Embrey v. Bowen*, 849 F.2d 418, 422 n.3 (9th Cir. 1988); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007); *Lester*, 81 F.3d at 830-31.

Here, in determining plaintiff's RFC and, relatedly, the range of work available to him, the ALJ ignored opined limitations such as needing to change positions and take breaks, and instead made the conclusory finding that plaintiff was capable of a full range of light work. Indeed, it is difficult, if not impossible, to discern what the ALJ made of these various opined limitations, because he offered no analysis as to why he thought they should be either credited or discredited.

The burden is on the Commissioner at step five of the evaluation to prove that plaintiff has the capacity to perform work other than his past relevant work. This case should be remanded for discussion, analysis and consideration of the varied, opined nonexertional limitations related to plaintiff's severe neck impairment. If, after proper analysis of these opinions, it is determined that these limitations are "sufficiently severe" to limit the range of work plaintiff can perform, a vocational expert should be called to determine if there are other jobs plaintiff can do in light of those limitations.

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further findings addressing the deficiencies noted above, and if appropriate, further development of the record.

////

**V. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. This matter is remanded for further proceedings consistent with this order; and,

4. The Clerk is directed to enter judgment for plaintiff.

DATED: March 25, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE